**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWIN A. BLAISURE, INDIVIDUALLY AND ON BEHALF OF CLASSES OF SIMILARLY SITUATED PERSONS,<br><br>Plaintiff,<br><br>v.<br><br>SUSQUEHANNA COUNTY and NICHOLAS CONIGLIARO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS WARDEN OF THE SUSQUEHANNA COUNTY CORRECTIONAL FACILITY<br><br>Defendants. | CIVIL ACTION–CLASS ACTION NO. 3:10-CV-2336<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court are Defendants Susquehanna County and Nicholas Conigliaro's Motion for Summary Judgment (Doc. 37), accompanying Statement of Facts (Doc. 38), and Brief in Support (Doc. 39). Also before the Court are Plaintiff Edwin A. Blaisure's ("Blaisure") Brief in Opposition (Doc. 42) to the motion, Plaintiff's Answer to Defendants' Statement of Facts (Doc. 43), and Defendants' Reply Brief to Plaintiff's Brief (Doc. 44).

Plaintiff Blaisure brings this action pursuant to 42 U.S.C. § 1983, alleging that his Fourth Amendment right to be secure against unreasonable searches was violated when he was subjected to visual body cavity searches ("strip searches") each time he exited and re-entered the Susquehanna County Correctional Facility ("SCCF"), pursuant to SCCF policy. Blaisure brings suit on behalf of himself and similarly situated prisoners, requesting compensatory and punitive damages, attorney's fees and court costs, and a declaration that the strip search policy is unconstitutional. Defendant Nicholas Conigliaro ("Conigliaro") is sued individually and in his official capacity as Warden of the SCCF.

Defendants seek summary judgment, contending that there are no disputes of material fact, and that the policy of strip searching prisoners before and after excursions is

reasonably related to a legitimate penological interest: maintaining the safety of transporting officers, the public, staff and general population at the SCCF and courthouse. Thus, the practice is a constitutionally-permitted search of prisoners, and does not violate the Fourth Amendment. Because the evidence viewed in the light most favorable to the Plaintiff shows that SCCF's strip search policy for prisoner excursions is reasonably related to the legitimate penological interests of prison security and the safety of transporting guards and the public, Defendants' Motion for Summary Judgment will be granted.

## I. Background

### A. Factual History

In considering a Motion for Summary Judgment, a court must view the facts in the light most favorable to non-moving party–here, Plaintiff Blaisure and fellow class members.

Plaintiff was detained at SCCF in August and September 2010. (*Def. Statement of Material Facts* ("Def. SMF"), Doc 38, ¶ 1; *Pl. Res. to Def. SMF*, Doc. 43, ¶ 1.) During the six (6) weeks he was held there, Plaintiff left the SCCF on three (3) occasions: on August 30, 2010, to attend a proceeding at the Susquehanna County Court of Common Pleas; on September 2, 2010 to attend a proceeding before a Magistrate in Montrose, Pennsylvania; and on September 16, to attend a dental appointment. (Doc. 38, ¶ 2; Doc. 43, ¶ 2.)

Pursuant to SCCF policy, Plaintiff was strip searched on each of the above occasions both when he left the SCCF and when he returned, consistent with the facility's policy that all inmates be strip searched upon exit and re-entry to the prison.[1] (Doc. 38, ¶ 3; Doc. 43, ¶ 3.) Defendants state that they have "a blanket policy of strip searching every inmate upon leaving and reentering the prison during the time of their incarceration." (*Def.'s Answer,* Doc. 9, ¶ 4; *Pl.'s Compl.,* Doc. 1, ¶ 16.) Plaintiff was not physically touched during the searches. (Doc. 38, ¶ 4-5; Doc. 43, ¶ 4-5.)

---

[1] This policy only applies to inmates being temporarily transported outside of the SCCF by COs, and does not apply to inmates on work release.

SCCF's strip search policy for newly-admitted inmates is that the institution considers the individualized circumstances of each person when deciding whether to strip search them. (Doc. 43, ¶ 3.)

The strip search policy for detainees temporarily departing the jail is set out in SCCF Policy Statements Nos. 13.1 and 15.1. (Doc. 43-1, *Ex. A, Ex. B*.) Plaintiff describes how he was strip searched in accordance with these policies:

> Plaintiff was required to "remove all of his clothing," SCCF Policy No. 15.1 (attached as Exhibit A) at § III.A, "lift his penis with one hand" so that SCCF personnel could "inspect the underside for anything taped to [the penis]," *id.* at § V.C.2.i., "lift the scrotum" for inspection, *id.*, and "bend forward at the waist and grip his[]buttocks in his[] hands and spread them apart, squat and cough several times." *Id*. at § V.C.2.k. SCCF staff "[v]isually examine[d] [Plaintiff's anus] for contraband." *Id*.

(Doc. 43, ¶ 3(a)).

Female inmates experience a similar process:

> All inmates (male or female) must then show the tops and bottoms of their hands, fingernails, and fingers, run their fingers through their hair and behind their ears, open their mouths for inspection, and have their armpits searched. *See Conigliaro Dep*. (Doc. 39-1) at 49:2-49:11. . . .Female inmates must "lift their breasts one at a time." *Id.* at 51:6-51:7. If obese, the female must "lift folds if there's any folds." *Id.* at 51:7-51:9. Female inmates then must "[f]luff the pubic hair" and "show their vagina and show their rectum" by bending over and coughing in the same manner as men. *See id.* at 51:12-51:16 . Prison guards "[v]isually inspect the vagina, having the inmate manipulate the labia if necessary." *Id.* at 55:7-55:9.

Plaintiff notes that this policy was in place at the time he was incarcerated. It has since changed, but according to Defendant Conigliaro's deposition testimony, it is not practically different. (Doc. 43, ¶ 3, n. 3.) Warden Conigliaro is individually and directly responsible for enforcing and maintaining SCCF's strip search policy. (*Id.* at ¶ 3(c).)

When prisoners temporarily exit the SCCF for medical, court, and other appointments, they are placed in handcuffs and leg irons after they are searched. (Doc. 38, ¶ 7.) During each of his three excursions, Plaintiff Blaisure was in handcuffs and leg irons the entire time that he was not on SCCF premises. (Doc. 43, ¶ 7.) Plaintiff contends that this was pursuant to SCCF Policy 13.1 (Doc. 43-2, *Pl. Ex. B*), requiring that "any inmate not on work release shall be cuffed, in front with the waist chain/belt and leg irons prior to leaving the secure area

3

of the Facility," and "handcuffs and leg irons must always be double locked when in use. . . . restraints shall be inspected frequently to discourage escape manipulation." (*Id.* at 3.)

Defendants assert that when prisoners appear for proceedings at the Susquehanna County Court of Common Pleas ("County Court"), Judge Kenneth Seamans routinely directs that their handcuffs be removed. (Doc. 38, ¶ 8.) However, Plaintiff asserts that when he appeared before Judge Seamans, he was handcuffed and leg-shackled throughout the proceedings. (Doc. 43, ¶ 8.) Defendants maintain that when prisoners are taken to the County Court, they are "routinely" permitted to consult with attorneys in private, out of the hearing or sight of the transporting officers. (Doc. 38, ¶ 9.) Plaintiff contends that when he appeared at this court, he was in the direct presence of the officers who transported him the entire time he consulted with his attorney. (Doc. 43, ¶ 9.) Attorneys are not required to go through a metal detector upon entering the Courthouse. (Doc. 38, ¶ 10; Doc. 43, ¶ 10.)

When appearing at magistrate hearings in Susquehanna County, prisoners are permitted to consult with their attorneys in a closed room out of the sight and hearing of the transporting officers. (Doc. 38, ¶ 11; Doc. 43, ¶ 11.) Defendants assert that during magistrate hearings, prisoners' handcuffs are removed so that they may take notes and assist their lawyers in their defense during the hearing. (Doc. 38, ¶ 12.) Plaintiff Blaisure disputes this, and contends that when he appeared at a magistrate hearing on September 2, 2010, he was handcuffed and leg-shackled throughout the proceeding. (Doc. 43, ¶ 12.)

Defendants state that when prisoners are taken to dental appointments by correctional officers ("COs"), those officers must leave the room when x-rays are taken. (Doc. 38, ¶ 13.) Plaintiff asserts that at his dental appointment, he was handcuffed, leg-shackled, and accompanied by two COs the entire time. (Doc. 43, ¶ 13.) Defendants assert that at dental appointments, "prisoners are routinely seated next to trays of sharp dental instruments." (Doc. 38, ¶ 14.) Plaintiff disputes this, stating that Defendants provide no basis for this assertion, and that Defendants admit that they are unaware of any instance when a prisoner returning from a dental appointment had contraband. (Doc. 43, ¶ 14.)

Defendants assert that when COs transport prisoners to medical appointments,

prisoners are sometimes outside of the sight and/or hearing of the CO.  (Doc. 38, ¶ 15.) Plaintiff disputes this, contending that he was accompanied by two COs throughout his entire dental appointment.  (Doc. 43, ¶ 15.)

Defendants state that the strip search upon exit policy is in place because a prisoner could smuggle a weapon out of the prison and use it to injure transporting officers, court personnel, healthcare providers, or members of the public.  (Doc. 38, ¶ 16.)  Defendants state that the strip search upon reentry policy is in place because a prisoner, while in a meeting or otherwise outside the sight and hearing of transporting COs, could take possession of contraband to bring into prison.  (*Id.* at ¶ 17.)  Plaintiff argues that Warden Conigliaro testified in his deposition that since he began working at SCCF in 2002, staff has never found contraband on an inmate departing for or returning from a court or medical appointment.  (Doc. 43, ¶¶ 16-17.)

**B. Procedural History**

The initial background of this case is set forth in my August 29, 2011, Memorandum Order (Doc. 8) granting in part and denying in part Defendants' Motion to Dismiss.  In that order, I granted Defendants' Motion to Dismiss (Doc. 4) the claims of Plaintiff Blaisure's first proposed class, comprised of all arrestees charged with non-indictable offenses who were processed, housed or held over at the SCCF since November 11, 2008.  This decision to dismiss was based on the United States Court of Appeals for the Third Circuit's holding in *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 621 F.3d 296, 311 (3d Cir. 2010) that blanket strip searches of non-indictable offenders are constitutional under the Fourth Amendment.  (Doc. 8, 7.)  However, I denied Defendants' motion to dismiss with respect to the claims at issue here: the Fourth Amendment claims of a class of all inmates who were processed, housed, or held over at SCCF during the same time period who experienced SCCF's blanket policy of strip searching prisoners each time they left and re-entered the facility regardless of the surrounding circumstances.

On April 2, 2012, the United States Supreme Court affirmed the Third Circuit Court

of Appeals' *Florence* decision. *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1523 (2012) (holding that "the search procedures at [the facilities] struck a reasonable balance between inmate privacy and the needs of the institutions. . . . The judgment of the Court of Appeals for the Third Circuit is affirmed.").

Defendants filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) on May 15, 2012, arguing that in light of the Supreme Court's decision in *Florence*, Blaisure could not state a Fourth Amendment claim regarding SCCF's blanket policy of strip searching prisoners each time they exit and re-enter the facility. (Doc. 16.) On September 17, 2013, I denied Defendants' Motion for Judgment on the Pleadings. (Doc. 28.) After a case management conference, I set discovery to end on April 30, 2014. (Doc. 29.) On April 3, 2014, Defendants moved for an extension of time to complete discovery and to file dispositive motions (Doc. 35), which I granted on April 4 (Doc. 36), extending the deadline to June 30, 2014.

On June 25, 2014, Defendants filed the Motion for Summary Judgment (Doc. 37), Brief in Support (Doc. 39) and Statement of Undisputed Material Facts (Doc. 38) presently before me. On July 18, Plaintiff filed a Brief in Opposition (Doc. 42) and an answer to Defendants' Statement of Material Facts (Doc. 43). On July 29, Defendants filed a Reply Brief (Doc. 44). Thus, this matter is fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the

applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Anderson*, 477 U.S. at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010).  The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor."  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *Anderson*, 477 U.S. at 256-57.  The Court need not accept mere conclusory allegations, whether they are made in the Complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party 's favor, thereby establishing a genuine issue of fact for trial."  *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)).  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."  *Id*.  (quoting *Hugh*

*v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).  In deciding a Motion for Summary Judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. Discussion

Defendants move for summary judgment because they contend there are no disputed material facts, and they are entitled to judgment as a matter of law.  Plaintiff Blaisure asserts that SCCF's policy of strip searching inmates before and after they temporarily leave the prison violated his constitutional rights and those of similarly-situation inmates.  Defendants assert that this policy is constitutional under *Florence v. Bd. of Chosen Freeholders of Burlington,* 132 S. Ct. 1510 (2012), which builds upon the standard set out in *Bell v. Wolfish*, 441 U.S. 520 (1979): a prison regulation which otherwise might impinge on an inmate's constitutional rights must be upheld "if it is reasonably related to legitimate penological interests." *Bell*, 441 U.S. at 547.  Defendants argue that their policy serves the legitimate penological interest of "preserving and protecting prison security," as prisoners could smuggle a weapon out of prison and use it to harm others, or could smuggle a weapon or other contraband into prison upon return.  (Doc. 38, ¶ 18.)  Plaintiff contends that the policy is overly broad and does not further legitimate penological interests.  Plaintiff argues that because he was handcuffed and leg-shackled throughout his excursions, it was unnecessary and unjustified to strip search him and other inmates.

Parties agree that *Florence* sets out the proper standard to examine whether the SCCF's policy is constitutional.  In *Florence,* the Supreme Court upheld the Third Circuit Court of Appeals' determination that a prison's policy of strip searching all offenders upon admittance did not violate the Fourth Amendment, deeming that the searches "struck a reasonable balance between inmate privacy and the needs of the institutions." *Id.* at 1523.  They found that this policy was a constitutional way to further the legitimate penological interest of keeping contraband out of prisons. *Id.*  The Court recognized the challenges prison officials face, and emphasized that "[m]aintaining safety and order at these institutions

requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 1515. "In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Id.* at 1513-14.

Here, the interests that Defendants put forth for conducting a strip search upon an inmate's escorted excursion from SCCF are legitimate penological interests: to prevent an inmate from smuggling a weapon out of prison to use to harm transporting officers, court personnel, healthcare providers, or members of the public.  Furthermore, their reasons for conducting a strip search upon an inmate's return –keeping contraband out of prison–is a legitimate penological interest that the Supreme Court recognized in *Florence*. *Id.* at 1516. Blaisure does not dispute that these are legitimate penological interests; rather, he asserts that the strip searches are not reasonably related to furthering these interests, and the invasion of privacy is not outweighed by the prison's legitimate interests.

Viewing the facts and evidence in the light most favorable to Plaintiffs, SCCF's strip search policy is constitutional because it is reasonably related to the legitimate penological interests of protecting prison security and the safety of transporting officers and the public. Thus, I will grant Defendants' Motion for Summary Judgment.  Strip searching inmates is a reasonable way to prevent the smuggling of weapons and contraband.  While the searches may feel intrusive, the necessity of prison safety outweighs this.  Furthermore, prison officials must be granted broad discretion in enacting policies to maintain the security of prisons.  *Id.* at 1515.  The record does not contain the requisite substantial showing that SCCF's policies are "an unnecessary or unjustified response to problems of jail security." *Id.* at 1513-14.

Plaintiff does not dispute that detainees are sometimes taken out of handcuffs and shackles when in court and during medical appointments.  Plaintiff merely asserts that *he* was not taken out of these restraints.  Because prisoners are at times taken out of their restraints, they may have the opportunity to access weapons smuggled out of prison, or to conceal contraband they intend to smuggle into prison.  Even in restraints, prisoners may

be able to access and hide contraband. Again, Plaintiff does not assert that SCCF prisoners are never unsupervised during these excursions, only that *he* was always supervised. Prisoners are at times unsupervised, further elevating the risk that they may smuggle goods that could affect prison security and the safety of transporting officers and the public. Prisoners meet with attorneys in private, and COs at times leave the room during medical appointments. While Plaintiff may not have experienced these situations, Plaintiff does not dispute that such situations happen routinely. Thus, a policy of strip searching all departing and returning inmates is a reasonable way to ensure that prisoners do not have contraband hidden in body cavities when they depart from or return to prison.

## IV. Conclusion

For the above reasons, Defendants' Motion for Summary Judgment will be *granted.* An appropriate order follows.

 January 8, 2015                                                      /s/ A. Richard Caputo
 Date                                                                     A. Richard Caputo
                                                                                United States District Judge